NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |
|---|---|
| EMILY SPERBER, *individuals and next of friend to V.S., her daughter, a minor*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA and JEREMY LATCHMAN,<br><br>Defendants. | Civ. No. 19-11<br><br>**OPINION** |

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Jeremy Latchman ("Defendant"). (ECF No. 15.) The Court has decided the Motion based on the written submissions of the parties and without oral argument. For the reasons stated herein, Defendant's Motion is granted in part and denied in part.

## BACKGROUND

**I.     Factual Background**

Plaintiff Emily Sperber ("Plaintiff") is a resident of St. Croix, U.S.V.I. (Compl. ¶ 2.) Plaintiff brings suit on behalf of herself and her minor daughter, V.S. (collectively, "Plaintiffs"). (*Id.*) Defendant is an employee of the High Intensity Drug Trafficking Areas ("HIDTA")

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

program within the Drug Enforcement Administration ("DEA"). (*Id.* ¶ 4.)

On September 22, 2017, Defendant went to a condominium in St. Croix owned by Sarah Bourne (the "Condo"). (*Id.* ¶ 6.) Bourne was not in the Condo and Plaintiff was "overseeing" it in her absence. (*Id.*) Defendant approached Plaintiff and stated that Bourne had "authorized him to go into her Condo to retrieve water and bleach to be taken to his job at HIDTA-DEA." (*Id.*) Plaintiff gave Defendant the key to access the Condo "to solely get bleach and water." (*Id.* ¶ 7.) Fifteen minutes later, Plaintiff went to the Condo to check on Defendant and retrieve the key. (*Id.* ¶ 8.) Plaintiff observed that Defendant had bleach in his hand and water stacked on the ground by the front door. (*Id.* ¶ 9.) Defendant told Plaintiff that he was not ready to leave yet and that he intended to "grab some other things." (*Id.* ¶¶ 10, 12.) Defendant then told Plaintiff that "everything in the [C]ondo now belonged to him." (*Id.* ¶ 15.) Plaintiff explained to Defendant that Plaintiff's brother-in-law owned the Condo and Bourne rented it, and that Plaintiff "had been authorized by both persons to oversee and take care of the [C]ondo." (*Id.* ¶ 16.) Plaintiff also explained that "some of [her own] personal possessions were also stored [in] the [C]ondo" and Defendant could not take them. (*Id.* ¶ 14.)

When Plaintiff tried to pick up the key on the floor, Defendant grabbed it, placed it in his pants pocket, and accused Plaintiff of trespassing. (*Id.* ¶ 16.) After further discussion, Defendant told Plaintiff that if she did not leave, "he would physically remove her from the [C]ondo." (*Id.* ¶ 19.) Plaintiff refused and stated that "she would not leave the [C]ondo unless [Bourne] authorized [Defendant's] presence." (*Id.* ¶ 23.) At that point, Defendant "grabbed" and "twist[ed] [Plaintiff's] right wrist and slammed her up against the bedroom wall with her right shoulder hitting the wall with great force[.]" (*Id.* ¶¶ 28–29.) He then partially handcuffed Plaintiff. (*Id.* ¶ 29.) Plaintiff "struggled to keep her left wrist free," at which point Defendant "picked [Plaintiff]

2

up and carried her out the front door . . . and then slammed [Plaintiff] into the wrought iron gate, hitting her left leg against the gate." (*Id.* ¶ 30.) Defendant then handcuffed Plaintiff to the gate. (*Id.*) Plaintiff "screamed at [Defendant] and begged him to . . . release her." (*Id.* ¶ 31.) At that point, V.S., Plaintiff's minor daughter, arrived at the scene and began to cry. (*Id.* ¶¶ 32–33.) Defendant then uncuffed Plaintiff. (*Id.* ¶ 35.) Bourne called Defendant and told him to leave the Condo. (*Id.* ¶ 36.)

As a result of the altercation, Plaintiff alleges that she experienced physical injuries including "injured wrists, marks on her arms, . . . and [an] injured shoulder, neck and back." (*Id.* ¶ 39.) In additional to physical injuries, she claims "medical expenses and economic losses, mental anguish, pain and suffering, lack of freedom, fear, terror and loss of enjoyment of life." (*Id.* ¶ 42.) Additionally, V.S. has suffered "fright, anger, fear, nightmares, mental anguish, suffering and loss of enjoyment of life." (*Id.* ¶ 43.)

## II.    Procedural History

Plaintiffs filed the Complaint against Defendant and the United States of America on April 3, 2019. (ECF No. 1.) Plaintiffs allege that Defendant violated the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. § 1346, and the Fourth Amendment to the United States Constitution. (Compl. ¶¶ 1, 40.) On June 21, 2019, Defendant filed a Motion to Dismiss. (ECF No. 15.) Plaintiffs filed an Opposition (ECF No. 18), and Defendant filed a Reply (ECF No. 20). Defendant's Motion to Dismiss is presently before the Court.

## **LEGAL STANDARD**

### I.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a Defendant may move to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Gould Elecs.*

*Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In analyzing a facial challenge, a court "must consider only the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Mortensen*, 549 F.2d at 891). In considering a factual challenge, however, a court "may consider evidence outside of the pleadings." *Id.* (citing *Mortensen*, 549 F.2d at 891). To proceed with a factual challenge, a defendant must file an answer or "otherwise present[] competing facts." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014); *see also Int'l Ass'n of Machinists & Aeropsace Workers v. Nw. Airlines, Inc.*, 673 F.3d 700, 711 (3d Cir. 1982) ("[Defendant's] motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial attack[.]"). Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 WL 3908567, at *2 (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

II.     **Rule 12(b)(6)**

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting

4

*Iqbal*, 556 U.S. at 679). "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement [to] relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

### I.   Tort Claims

Defendant moves, pursuant to Rule 12(b)(1), to dismiss Plaintiffs' tort claims against him for lack of subject-matter jurisdiction. (Def.'s Br. at 6, ECF No. 16.) Defendant argues that any tort claims against him must fail because he was acting within the scope of his employment at the time of the events in question. (*Id.*) In support, Defendant submits the Certification of Gretchen C.F. Shappert, United States Attorney for the District of the Virgin Islands, which states that she has reviewed the Complaint and finds that "Jeremy Latchman . . . was acting within the scope of his employment with the United States of America at the time of the conduct alleged in the Complaint." (Shappert Cert. at 1, ECF No. 16-1.) Defendant also appends to his Reply his own declaration ("Latchman Declaration") and the declaration of Sarah Bourne ("Bourne Declaration"). (ECF Nos. 20-1, 20-2.)

The Westfall Act, 28 U.S.C. § 2679(d)(1), "provide[s] for absolute immunity to federal employees . . . , by making suit against the United States under the FTCA the exclusive remedy for negligent or wrongful acts by federal employees committed within the scope of employment." *Lomando v. United States*, 667 F.3d 363, 375 (3d Cir. 2011). The statute provides:

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim . . . shall be deemed to be an action against the United States under the

5

>provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). For purposes of this statute, the United States Attorney for the district where the civil action is brought "is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment . . . at the time of the incident out of which the suit arose." 28 C.F.R. § 15.4(a).

The scope-of-employment certification "is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive." *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992). "Thus, a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it." *Id.* "If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute . . . based on the certification, pleadings, documentary evidence, and affidavits." *Id.* Here, because the United States Attorney for the district where the civil action is pending has certified that Defendant was acting within the scope of his employment, (*see* Shappert Cert. at 1), the Court must determine whether Plaintiffs have proffered facts that demonstrate Defendant was in fact not acting within the scope of his employment.

A court's determination of scope of employment rests on the relevant state law of respondeat superior. *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000). In the Virgin Islands, an employee's conduct is within the scope of employment if:

>(a)  it is of the kind he is employed to perform;
>
>(b)  it occurs substantially within the authorized time and space limits;
>
>(c)  it is actuated, at least in part, by a purpose to serve the master; and
>
>(d)  if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

6

*Anderson v. Gov't of the V.I.*, 199 F. Supp. 2d 269, 275 (D.V.I. 2002) (quoting Restatement (Second) of Agency § 228(1)(a)–(d) (1958)). "Conversely, conduct is not within the scope of employment if it is (1) different in kind from that authorized, (2) far beyond the authorized time or space limits, or (3) too little actuated by a purpose to serve the master." *Id.*

Here, the record demonstrates that Defendant was acting within the scope of his employment when he went to Bourne's apartment to retrieve supplies and interacted with Plaintiff. First, his conduct was the kind he is employed to perform. According to the Latchman Declaration, one of Defendant's duties was to carry out the "Continuity of Operations Plan" ("COOP") for the DEA after Hurricane Maria hit St. Croix on September 19–20, 2017. (Latchman Decl. ¶¶ 3–4, ECF No. 20-2.) This included "restoration of the official duties of the DEA Resident office," and "checking on the well-being of DEA employees and condition of their property, gathering and issuing supplies to DEA employees affected by the storm, and assisting local law enforcement as needed." (*Id.* ¶ 4.) In line with this duty, Bourne requested that Defendant visit her apartment to gather supplies and check for any damage. (*Id.* ¶ 5.)

Second, Defendant's conduct occurred substantially within authorized time and space limits. Bourne gave Defendant permission to go to her apartment and retrieve supplies. (Bourne Decl. ¶ 10, ECF No. 20-1.) Moreover, Defendant went to Bourne's apartment on September 24, 2017, days after the hurricane hit St. Croix, and at 4:15 p.m., within what is typically considered reasonable work hours. (Latchman Decl. ¶ 6.) Third, Defendant's actions were actuated, at least in part, by a purpose to serve the DEA. As stated, Defendant was carrying out his COOP duties, which included restoring DEA operations and assisting DEA agents on the island. (*Id.* ¶¶ 3–4.) Fourth, Defendant's force against Plaintiff was not unexpectable by the DEA. Law enforcement agents are often expected to use reasonable force when the situation demands it. *See Graham v.*

7

*Connor*, 490 U.S. 386, 396–97 (1989).

Because the record establishes that Defendant was acting within the scope of his employment and Plaintiffs have not come forward with any specific facts rebutting this conclusion, the United States is properly substituted as the sole Defendant for Plaintiffs' FTCA claims. Accordingly, insofar as the Complaint brings common-law tort claims against Defendant, those claims are dismissed.

II. **Fourth Amendment Claim**

Plaintiffs also bring a claim against Defendant in his individual capacity for violating the Fourth Amendment. (Compl. ¶ 40.) Plaintiffs bring this claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1979). Defendant moves, pursuant to Rule 12(b)(6), to dismiss Plaintiffs' Fourth Amendment Claim on the ground that he is entitled to qualified immunity. (Def.'s Br. at 8–14.)

The doctrine of qualified immunity shields government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

A. *Constitutional Violation*

The use of excessive force when effectuating a search or seizure violates the Fourth Amendment. *Est. of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005). "To state a claim for

8

excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). A seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" *Florida v. Bostick*, 501 U.S. 429, 434 (1991). To determine whether the seizure was unreasonable, courts must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (internal quotation marks omitted). The Court evaluates objective reasonableness from the perspective of the officer at the time of the incident and not with the benefit of hindsight. *Maryland v. Garrison*, 480 U.S. 79, 85 (1987).

While this inquiry is highly individualized and fact-specific, the Supreme Court in *Graham* provided three factors to guide the Court's inquiry: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the police or others, and (3) whether the suspect is actively attempting to resist arrest or flee the scene. 490 U.S. at 396. The Third Circuit has also provided additional factors for consideration, including:

> the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

The Complaint sufficiently alleges that a seizure occurred. Plaintiff alleges that Defendant physically restrained her and restricted her liberty. (Compl. ¶¶ 24–34.) The Complaint also sufficiently alleges that the seizure was unreasonable. Plaintiff was not suspected of a crime nor were there any indications that she was engaged in criminal activity or presented a threat to Defendant. (*See id.* ¶¶ 9–35.) Although she resisted being handcuffed, there is no suggestion in

the pleadings that prior to the seizure she was armed or otherwise physically threatening Defendant. (*See id.* ¶¶ 23–30.) Plaintiff was the only person with whom Defendant had to contend until V.S. arrived, which occurred after Plaintiff was already handcuffed to the wrought iron gate. (*See id.* ¶¶ 30–35.) And there appear to be no other exigent circumstances present, such as a belief that someone was in imminent danger or that Plaintiff was attempting to flee. *Compare Olick v. Pennsylvania*, 739 F. App'x 722, 725 (3d Cir. 2018) (denying qualified immunity at the motion-to-dismiss stage when an officer unexpectedly shoved the plaintiff across the floor during an arrest for a summary offense because there was "no suggestion in the pleadings that [the plaintiff] was armed, attempting to flee, or posing an immediate threat to the safety of [the officer] or others"), *and Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (denying summary judgment on excessive force claim when officers used guns and handcuffs "without any reason to feel threatened by the [plaintiffs], or to fear [the plaintiffs] would escape"), *with Lockhart v. Gov't of V.I.*, 2009 WL 2407821, at *7 (D.V.I. Aug. 3, 2009) (finding, at the summary judgment stage, that an officer acted reasonably when he restrained and handcuffed the plaintiff when responding to 911 reports of gunshots in a home related to a "volatile, potentially violent domestic dispute, with children and family 'hostages' at risk").

Rather, it appears that Defendant's only basis for detaining Plaintiff was because she refused to leave the Condo when Defendant told her to. Although an individual's aggressive or non-compliant behavior may lead to a volatile or dangerous situation, there is no indication, based on the facts as alleged in the Complaint, that such a situation occurred here. (*See* Compl. ¶¶ 15–30); *cf. Santini v. Fuentes*, 739 F. App'x 718, 721 (3d Cir. 2018) (concluding, at the summary judgment stage, that officers' use of nightsticks, pepper spray, and handcuffs was reasonable when the plaintiff was "repeated[ly] non-complian[t] with the instruction to keep

10

hands visible" and "the facts suggest some level of resistance to [the officer] at all stages of the physical interaction and continued resistance, even as officers instructed [the plaintiff] to stop resisting"); *United States v. Gonsalves*, 2020 WL 1170217, at *6 (D.V.I. Mar. 10, 2020) (observing that "[a] [d]efendant acting aggressively and possibly having access to a weapon gives an officer a reasonable basis to believe that placing him in handcuffs is a necessary measure to neutralize a threat of physical harm"); *Park v. Veasie*, 2013 WL 1149241, at * 5 (M.D. Pa. Mar. 19, 2013) (concluding, at the summary judgment stage, that officers' use of handcuffs to restrain the plaintiff was reasonable "on account of [the plaintiff's] size, emotional state, cursing and arm movements on arrival in his home, the prospect of violence as they removed his son, and the nature of the crime for which the warrant was executed"); *Norcross v. Town of Hammonton*, 2007 WL 2085366, at *4 (D.N.J. July 17, 2007) (finding, at the summary judgment stage, that an officer's seizure of a plaintiff was reasonable when the plaintiff failed to comply with repeated instructions and was "volatile, erratic, aggressive and emotional" and the officer was attempting "[t]o protect himself, the other officers, [other witnesses], and members of the public nearby").

Accordingly, under the facts presented in the Complaint, the Court concludes that the Plaintiffs have plausibly pled a constitutional violation.

B. *Clearly Established Right*

At step two, "[the Court] inquires whether—even [if] an officer violated an individual's constitutional right—immunity should still protect that officer from liability." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007)). To answer that question, the Court must determine whether the right violated by the officer was "clearly established" at the time of the violation. *Id.* (citing *Curley*, 499 F.3d at 207; *Saucier v.*

*Katz,* 533 U.S. 194, 202 (2001)). To make that determination, the Court engages in another reasonableness inquiry: "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier*, 533 U.S. at 202). Like the reasonableness inquiry conducted in step one, this inquiry is objective and fact-specific. *Id.* Despite these similarities, the step two inquiry is distinct from the inquiry conducted in step one; the purpose of the step two inquiry is to acknowledge the reality that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Curley*, 499 F.3d at 207 (quoting *Saucier*, 533 U.S. at 205) (internal quotation marks omitted). The clearly established right should not be defined "at a high level of generality," but rather must be "particularized" to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted).

Applying this standard to the facts as alleged in the Complaint, the question presented is whether it was clearly established that it would violate the Fourth Amendment for an officer to restrain, partially handcuff, slam against the wall, pick up and move outside, and handcuff to a gate a person claiming to be the caretaker of a residence when the person was not suspected of a crime and did not pose a threat to the officer. The Court finds that this right was clearly established. It was clearly established that a person has a right to be free from police applications of force that are more than what is necessary under the circumstances. *See Graham*, 490 U.S. at 395–97. Here, as discussed, there is no suggestion in the pleadings that Plaintiff was engaged in criminal activity, or "was armed, attempting to flee, or posing an immediate threat to the safety of [Defendant] or others." *See Olick*, 739 F. App'x at 725. Although the Complaint states that Plaintiff refused to follow Defendant's directions and resisted being handcuffed, the Court cannot conclude that the extent of Defendant's actions, as alleged, were not more extreme than necessary under the totality of the circumstances.

The Court is mindful that questions of qualified immunity should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Here, however, there are "unresolved disputes of historical fact relevant to the immunity analysis" regarding the reasonableness of Defendant's actions. *See Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002). Thus, the Court cannot conclude, at this early stage, that Defendant is entitled to qualified immunity. Defendant's Motion to Dismiss Plaintiffs' Fourth Amendment claim is therefore denied.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 15) is granted in part and denied in part. Insofar as the Complaint brings common-law torts claims under the FTCA against Defendant, those claims are dismissed, and the United States is substituted as the party defendant pursuant to 28 U.S.C. § 2679(d). An appropriate Order will follow.

Date: <u>August 31, 2021</u>                             <u>*/s/ Anne E. Thompson*</u>
                                                                          ANNE E. THOMPSON, U.S.D.J.